IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

GARY J. GALLONIO,                              )
                    Plaintiff,                 )          Civil Action No. 04-1642
                                               )
          v.                                   )          United States District Judge Lancaster
                                               )          United States Magistrate Judge Lenihan
JAMESON MEMORIAL HOSPITAL,                     )
                    Defendant.                 )          Re: Doc. No. 8


## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

I.    RECOMMENDATION

          It is recommended that Defendant's Motion to Dismiss at Doc. No. 8 be granted

insofar as it relates to Plaintiff's claims filed pursuant to Title VII, the Equal Pay Act, the

Americans with Disabilities Act, the Pennsylvania Human Relations Act, and the hostile work

environment claim.  It is also recommended that Defendant's Motion to Dismiss at Doc. No. 8 be

denied as it relates to Defendant's arguments concerning the statute of limitations.  Finally, it is

recommended that Defendant's Motion for a More Definite Statement at Doc. No. 8 be granted

insofar as it relates to Plaintiff's retaliation and negligence claims.


II.   REPORT

          A.    Facts

          Plaintiff Gary J. Gallonio ("Plaintiff") has been employed by the Defendant,

Jameson Memorial Hospital, ("Defendant") since 1975.  (Complaint ¶ 10.)  Plaintiff continues in

its employ today.  (Complaint ¶ 10.)

          At some time not specified in the Complaint, "Plaintiff underwent a partial

gastrectomy[1] and esophagectomy[2]" and as a result thereof, is unable to "control flatulence and

reflux." (Complaint ¶ 10.) Plaintiff avers that at all times relevant to the Complaint, Defendant

was aware of Plaintiff's health problems and "after continued harassment," Plaintiff delivered a

statement from his primary care physician to Defendant. ("Complaint ¶11.) Plaintiff further

avers that "[a]t various times during his employment, [he] has suffered medical conditions which

have required acute or emergency care or absence from work" and that he is reprimanded by

Defendant for these absences. (Complaint ¶¶ 13-14.) Plaintiff alleges that "Defendant has

received and invited complaints from Plaintiff's co-workers and wrongfully established a line of

communication with Plaintiff's co-workers for the purpose of reporting on Plaintiff."

(Complaint ¶ 15.) He also complains that Defendant has reprimanded him for burping in the

workplace, even though Defendant knows of Plaintiff's medical condition, and has failed to

make reasonable accommodations for him. (Complaint ¶¶ 16-17.) Plaintiff also avers that he

has been reprimanded for being slow even though he "just recently obtained the proper

equipment" to adequately perform his duties. (Complaint ¶ 19.) Plaintiff states that Defendant

"allowed the conduct of offending parties to continue," exposing "him to ridicule, harassment,

embarrassment, and hostility of co-workers," and that he "lost effectiveness in his position."

(Complaint ¶ 23.)

Finally, Plaintiff avers that he "was promoted to the position of Specimen

Processor," that he effectively performed the duties of this new position, and that he has not

---

[1]Excision of all or part of the stomach. Stedman's Medical Dictionary 731 (27TH Ed.
2000).

[2]Excision of all or any part of the esophagus. Stedman's Medical Dictionary 619 (27th
Ed. 2000).

received the attendant pay raise even though he had successfully completed a certain

probationary period.  (Complaint ¶¶ 24-26.)  Plaintiff also states that he has been directly and

repeatedly threatened with the loss of employment.  (Complaint ¶ 28.)

On March 23, 2004, Plaintiff filed a Charge of Discrimination with the United

States Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human

Relations Commission ("PHRC").  (Defendant's Motion to Dismiss and for a More Definite

Statement, Doc. #8, Exhibit B at p. 1.)  Plaintiff checked the boxes indicating that the alleged

discrimination was based on disability only[3], and that it was a continuing action with the earliest

incident occurring on October 15, 2003 and the latest occurring on November 17, 2003.  The

charge also contains a narrative detailing Plaintiff's claims of disability discrimination and how

he has been underpaid by one dollar per hour after the successful completion of his probationary

period.  (Defendant's Motion to Dismiss and for a More Definite Statement, Doc. #8, Exhibit B

at pp. 1-2.)  The EEOC issued a Dismissal and Notice of Rights to Plaintiff dated July 29, 2004.

(Defendant's Motion to Dismiss and for a More Definite Statement, Doc. #8, Exhibit C.)[4]

Gallonio filed the present Complaint in federal district court on October 27, 2004,

alleging violations of "Title VII of the Civil Rights Act of 1964, as amended by the Equal

---

[3]An Affidavit filed by Plaintiff at Docket Number 6 contains an EEOC Pittsburgh Area Office General Intake Questionaire form completed by Plaintiff on February 23, 2004.  On this form, Plaintiff indicated age as another basis for discrimination.  Subsequent EEOC documentation, however, does not include age as a basis for Plaintiff's discrimination claim.

[4]Defendant's submissions also contain two other EEOC Dismissal and Notice of Rights documents pertaining to charges filed by Plaintiff against Defendant dated June 13, 2002 and May 22, 2001.  (Defendant's Motion to Dismiss and for a More Definite Statement, Doc. #8, Exhibits D & E.)  The facts and circumstances surrounding these charges are unclear from the face of the documents and no other information is provided by the parties in their submissions to this Court.

Employment Opportunity Act of 1972, the Civil Rights Act of 1991, 42 U.S.C. § 2000E-1, the

Equal Pay Act of 1963, 29 U.S.C. § 206, the Pennsylvania Human Relations Act, 43 P.S. § 951

and the Americans With Disabilities Act." (Complaint, Doc. No. 1 at p.1.)  The last sentence of

the introductory paragraph to Plaintiff's Complaint and Counts 2 through 4 also suggest that

Plaintiff is attempting to make out a hostile work environment claim, a retaliation claim, and a

negligence claim.  No specific counts are directed to Plaintiff's claims mentioned in the

Complaint's introductory paragraph relating to Title VII and The Equal Pay Act.


      B.    <u>Legal Standard</u>

In ruling on a motion to dismiss filed pursuant to Rule 12(b)(6), the Court is

required to accept as true all allegations made in the complaint and all reasonable inferences that

can be drawn therefrom, and to view them in the light most favorable to the plaintiff.  <u>See</u> <u>Blaw</u>

<u>Knox Ret. Income Plan v. White Consol. Indus., Inc.</u>, 998 F.2d 1185, 1188 (3d Cir. 1993); <u>Ditri</u>

<u>v. Coldwell Banker</u>, 954 F.2d 869, 871 (3d Cir. 1992).  The issue is not whether the plaintiff will

ultimately prevail, but rather whether he can support his claim by proving any set of facts that

would entitle him to relief.  <u>See</u> <u>Hishon v. King & Spalding</u>, 467 U.S. 69 (1984).  Dismissal is

appropriate "only if it is clear that no relief could be granted under any set of facts that could be

proven consistent with the allegations."  <u>See</u> <u>Port Authority of New York and New Jersey v.</u>

<u>Arcadian Corp.</u>, 189 F.3d 305, 311 (3d Cir. 1999).

Courts generally consider only the allegations of the complaint, attached exhibits,

and matters of public record in deciding motions to dismiss.  <u>Pension Benefit Guar. v. White</u>

<u>Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993).  Factual allegations within documents

described or identified in the complaint may also be considered if the plaintiff's claims are based upon those documents.  Id.  Moreover, a court may consider documents attached as exhibits to a defendant's motion to dismiss if the plaintiff's claims are based on the documents, and they are undisputedly authentic.  Id.  "Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied."  Id. (citing Goodwin v. Elkins & Co., 730 F.2d 99, 113 (3d Cir. 1984) (Becker, J., concurring)).  A district court may consider these documents without converting a motion to dismiss into a motion for summary judgment.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal Rule of Civil Procedure 12(e) provides that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."  Fed. R. Civ. P. 12(e).

In its Brief in Support of Defendant's Motion to Dismiss and Motion for a More Definite Statement, Defendant argues that its Motions should be granted for the following reasons: 1) Defendant contends that pursuant to Federal Rule of Civil Procedure 12(b)(1), this Court lacks subject matter jurisdiction over Plaintiff's claims filed pursuant to Title VII and the Equal Pay Act in that he failed to exhaust administrative remedies with regard to these claims; 2) Defendant asserts that Plaintiff has failed to allege a disability that substantially limits one or more of Plaintiff's life activities, and therefore, fails to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6); 3) Defendant contends that some of the allegations of the Complaint are the same as those previously dismissed by the EEOC in

2001 and 2002 for which Plaintiff failed to file suit within ninety days of receiving his letter of determination, and consequently, any allegations relating to these charges are barred by the applicable statute of limitations; 4) in the alternative, Defendant contends that Plaintiff's complaint is so vague that it is unable to form a responsive pleading.

Plaintiff, in opposition to Defendant's Motion to Dismiss and for a More Definite Statement, argues the following: 1) Plaintiff, having received a dismissal from the EEOC, may now file an action in federal district court; the EEOC does not have "the power to limit a cause of action in this Court" (Brief in Opposition to Defendant's Motion to Dismiss & Motion for More Definite Statement, Doc. #11 at p. 3); 2) Plaintiff has adequately alleged an ADA claim in that he averred in paragraph 10 of the Complaint that "he has undergone a partial gastrectomy and esphagectomy which has caused an inability to control reflux and flatulence." Plaintiff adds in his Brief in Opposition to Defendant's Motion to Dismiss that "[h]is condition hinders his ability to work" (Id.); 3) Plaintiff has alleged "an ongoing course of conduct," and any acts relating to previous EEOC charges are relevant to the case at bar; and 4) Plaintiff argues that his Complaint comports with the Federal Rules of Civil Procedure and consequently, no amendment is required.

      C.     <u>Analysis</u>

    1.    <u>Failure to Exhaust Administrative Remedies</u>

Defendant argues that this Court lacks subject matter jurisdiction over Plaintiff's claims filed pursuant to Title VII and the Equal Pay Act in that Plaintiff failed to exhaust his

administrative remedies with regard to these claims[5].

        Title VII provides in pertinent part as follows:

> It shall be an unlawful employment practice for an employer –
> (1) to fail or refuse to hire or to discharge any individual, or otherwise to
> discriminate against any individual with respect to his compensation, terms,
> conditions, or privileges of employment, because of such individual's race, color,
> religion, sex, or national origin . . ..

42 U.S.C. § 2000e-2(a)(1).

        The law is clear that "[a] person claiming to be aggrieved by a violation of Title

VII of the Civil Rights Act of 1964 . . . may not maintain a suit for redress in federal district

court until he has first unsuccessfully pursued certain avenues of potential administrative relief."

Love v. Pullman Co., 404 U.S. 522, 523 (1972) (footnote omitted).  The legislative intent

underlying the exhaustion requirement is twofold: 1) to promote voluntary compliance without

litigation; and 2) to give notice to the charged party.  Glus v. C.G. Murphy Co., 562 F.2d 880,

888 (3d Cir. 1977), cited in, Reddinger v. Hosp. Cent. Servs., Inc., 4 F. Supp.2d 405, 409 (E.D.

Pa. 1998).  The scope of the complaint in federal district court is "defined by the scope of the

[agency] investigation which can reasonably be expected to grow out of the charge of

discrimination . . .."  Hicks v. ABT Assocs., Inc., 572 F.2d 960, 965 (3d Cir. 1978) (quoting

---

[5]Defendant's arguments relating to the exhaustion of administrative remedies are
improperly characterized as jurisdictional.  The United States Court of Appeals for the Third
Circuit has clearly stated that questions regarding the exhaustion of administrative remedies "are
in the nature of statutes of limitation.  They do not affect the district court's subject matter
jurisdiction."  Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997) (quoting Hornsby v.
United States Postal Serv., 787 F.2d 87, 89 (3d Cir. 1986)).  Defendant's Motion to Dismiss on
this issue should have been argued under Federal Rule of Civil Procedure 12(b)(6).  See
Robinson, 107 F.3d at 1022.  See generally Babrocky v. Jewel Food Co., 773 F.2d 857, 863-64
(7th Cir. 1985) (requirement that complaint allegations be encompassed within EEOC charge is
more akin to condition precedent rather than an issue of subject matter jurisdiction); 1 Henry H.
Perritt, Jr., Americans With Disabilities Act Handbook § 12.02[B][5][a] (4th Ed. 2003).

Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir. 1976)).  See Antol v. Perry,
82 F.3d 1291, 1295-96 (3d Cir. 1996) (specifics of plaintiff's disability discrimination charge did
not "fairly encompass a claim for gender discrimination" where neither EEOC nor defendant
were put on notice of gender discrimination claim).

   Here, Plaintiff's EEOC charge complains only of disability discrimination.  (See
Defendant's Motion to Dismiss and Motion for More Definite Statement, Doc. # 8, Exhibit B.)
(hereinafter "Doc. #8, Exhibit B at __").  First, when asked to check among a list of possible
bases for discrimination, Plaintiff indicated discrimination based on disability only, and that it
was a continuing action.  (Doc. #8, Exhibit B at 1.)  The boxes indicating race, color, sex,
religion, national origin, retaliation, age or "other" were left blank.  (Doc. #8, Exhibit B at 1.)
Further, in the narrative section of the EEOC charge, Plaintiff complains of threats, reprimands
and unequal pay related to his burping and that he believes he is being discriminated against
because of his health condition.  (Doc. #8, Exhibit B at 1-2.)  He also lists in the EEOC charge
the names of five "Non-disabled Lab Technicians," four women and one man, "whose speed is
as slow or slower" than Plaintiff's and "whose job performance is no better" and yet they are
paid more than Plaintiff.  (Doc. #8, Exhibit B at 2.)  Plaintiff also indicates that one of these
"Non-disabled Lab Technicians" "often burps in the breakroom in the presence of other
employees who laugh about it."  (Doc. #8, Exhibit B at 2.)  Plaintiff concludes that this
individual has not been reprimanded for her loud burping.  (Doc. #8, Exhibit B at 2.)[6]

---

[6]Plaintiff's federal district court Complaint states only in the introductory paragraph that
Plaintiff brings this federal court action under Title VII.  No other facts are alleged, however,
that support a cause of action for employment discrimination based on race, color, religion, sex,
or national origin.  See 42 U.S.C. § 2000(e)-2(a)(1).  Plaintiff may not pursue an action under
Title VII for alleged employment discrimination due to a disability.  See Fieni v. Pocopson

Clearly, Plaintiff has not exhausted administrative remedies with regard to his Title VII claim.  Consequently, it is recommended that Defendant's Motion to Dismiss Plaintiff's Title VII claim be granted.

As to the Equal Pay Act, Plaintiff need not exhaust administrative remedies in order to bring an action thereunder in federal district court.  See County of Washington v. Gunther, 452 U.S. 161, 175 n.14 (1981) ("[T]he Equal Pay Act, unlike Title VII, has no requirement of filing administrative complaints and awaiting administrative conciliation efforts."); Bates v. High Reach Co., 1990 WL 102938 ( E.D. Pa. 1990) ("Violations of the Equal Pay Act do not have to be first reported to an administrative agency.") (citing Ososky v. Wick, 704 F.2d 1264, 1266 (D.C. Cir. 1983)).

While incorrectly asserting that Plaintiff failed to exhaust administrative remedies with regard to the Equal Pay Act, Defendant neglected to argue that Plaintiff has failed to state a claim thereunder pursuant to Rule 12(b)(6).  This Court raises the issue sua sponte, as it is apparent from the face of the Complaint that the facts and circumstances underlying Plaintiff's claims do not support an action under the Act.

The Equal Pay Act, by its terms at 29 U.S.C. § 206 (d), proscribes sex discrimination in wages as follows:

(d) Prohibition of sex discrimination

(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the

---

Home, 1997 WL 220280, *5 (E.D. Pa. 1997).

performance of which requires equal skill, effort, and responsibility, and which
are performed under similar working conditions . . ..

29 U.S.C. § 206(d) (emphasis added).

Again, as discussed above, Plaintiff makes no averments of sex discrimination in
his Complaint.  Instead, Plaintiff attempts to state a claim for employment discrimination based
upon a disability.  (Complaint ¶¶ 10, 11, 13, 14, 15-21, 23- 29.)  Consequently, it is
recommended that Plaintiff's claim pursuant to the Equal Pay Act be dismissed.

2.      ADA, PHRA, Hostile Work Environment, and Retaliation Claims

Next, Defendant argues that Plaintiff's ADA claim should be dismissed pursuant
to Rule 12(b)(6) because Plaintiff has failed to plead a disability that substantially limits one or
more of Plaintiff's life activities.[7]

The ADA forbids employers from "discriminat[ing] against a qualified individual
with a disability because of the disability of such individual in regard to job application
procedures, the hiring, advancement, or discharge of employees, employee compensation, job
training, and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  To
make out a claim for employment discrimination under the ADA, plaintiff must show that he is a
"qualified individual with a disability" within the meaning of the Act.  A "qualified individual

---

[7]Plaintiff also invokes the PHRA in the introductory paragraph to the Complaint although
no specific count of the Complaint is directed thereto.  "While the Pennsylvania Courts are not
bound by federal interpretations of parallel provisions in Title VII, [and] the ADA . . . its courts
nevertheless generally interpret the PHRA in accord with its federal counterparts."  Kelly v.
Drexel University, 94 F.3d 102, 105 (3d Cir. 1996) (citations omitted), quoted in, Buskirk v.
Apollo Metals, 307 F.3d 160, 166 (3d Cir. 2002); Rinehimer v. Cemcolift, 292 F.3d 375, 382 (3d
Cir. 2002).  Therefore, this Court's disposition of Plaintiff's ADA claim applies equally to
Plaintiff's PHRA claim.

with a disability" is "an individual with a disability who, with or without reasonable

accommodation, can perform the essential functions of the employment position that such

individual holds or desires."  42 U.S.C. § 12111(8).

A "disability" is defined in the Act as follows:

(A) a physical or mental impairment that substantially limits one or more of the
major life activities of such individual;

(B) a record of such an impairment; or

(C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

Major life activities, although not defined in the ADA, are discussed in EEOC

regulations and include, but are not limited to, "functions such as caring for oneself, performing

manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  See 29

C.F.R. § 1630.2(i).  An individual is "substantially limited" in a major life activity if he is

"significantly restricted as to the condition, manner, or duration under which [he] can perform a

particular major life activity as compared to the condition, manner, or duration under which the

average person in the general population can perform that same major like activity."  29 C.F.R. §

1630.2(j)(1)(ii).  In addition, the following factors should be considered in determining whether

an individual is substantially limited in a major life activity: the impairment's nature and

severity, the impairment's duration or expected duration, and the permanent or long-term impact

of or resulting from the impairment.  29 C.F.R. § 1630.2(j)(2).  Where, as is apparently the case

here, the major life activity at issue is working, "substantially limited" is defined as

"significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in

11

various classes as compared to the average person having comparable training, skills and

abilities." Olson v. Gen. Elec. Astrospace, 101 F.3d 947, 952 (3d Cir. 1996) (citing 29 C.F.R. §

1630.2(j)(3)(i)).  Consequently, a plaintiff's "inability to perform a single, particular job does not

constitute a substantial limitation in the major life activity of working." Id.  Courts may consider

the following in making the determination as to whether a plaintiff is substantially limited in the

major life activity of working:

> (A) The geographical area to which the individual has reasonable access;

> (B) The job from which the individual has been disqualified because of an
> impairment, and the number and types of jobs utilizing similar training,
> knowledge, skills or abilities, within that geographical area from which the
> individual is also disqualified because of the impairment (class of jobs); and/or

> (C) The job from which the individual has been disqualified because of an
> impairment, and the number and types of other jobs not utilizing similar training,
> knowledge, skills or abilities, within that geographical area, from which the
> individual is also disqualified because of the impairment (broad range of jobs in
> various classes).

29 C.F.R. § 1630.2(j)(3)(ii).

In his Complaint, Plaintiff indicates that he has had "a partial gastrectomy and

esophagectomy" and that as a result, he "cannot control flatulence and reflux."  (Complaint ¶

10.)  Plaintiff does not plead what, if any, major life activities are substantially limited by his

alleged disability.  In his Brief in Opposition to Defendant's Motion to Dismiss, Plaintiff states

that paragraph 10 of the Complaint sets forth his alleged disability, and then, for the first time,

indicates that "[h]is condition hinders his ability to work."  (Plaintiff's Brief in opposition to

Defendant's Motion to Dismiss & Motion for More Definite Statement, Doc. #11, at 3.)

Plaintiff's Complaint is devoid of allegations satisfying the above statutory

requirements.  It contains no factual allegations from which a reasonable inference can be drawn

that Plaintiff's burping resulting from his gastrectomy and esophagectomy affects the major life activity of working so as to state a claim upon which relief can be granted under the ADA. Instead, Plaintiff avers that he has been reprimanded for being slow in the performance of his work duties but indicated that this slow performance was due to the unavailability of proper equipment needed to adequately perform his duties.  (See Complaint ¶ 19.)  Plaintiff also avers that he was promoted but did not receive the accompanying pay raise even though "[f]rom the time Plaintiff assumed this position, Plaintiff effectively performed his job duties."  (Complaint ¶ 24-26.)  Plaintiff also avers that he "successfully completed his probation period."  (Complaint ¶ 26.)  Even if Plaintiff had appropriately averred that his alleged disability substantially limits the major life activity of working in his Complaint, he has failed to aver facts that demonstrate he was substantially limited in the performance of his duties with regard to this employment, and with regard to "a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities."  See 29 C.F.R. § 1630.2(j)(3)(i); see also Sutton v. United Airlines, Inc., 527 U.S. 471, 493 (1999) (petitioners' allegations inadequate where they failed to alleged that poor eyesight was regarded as impairment that substantially limits major life activity of working, where petitioners alleged only that respondent regarded their impairment as precluding them from holding positions as "global airline pilots," a single job, and not from substantial class of jobs).

            After careful consideration of the allegations in the Complaint and all reasonable inferences that can be drawn therefrom, and viewing them in the light most favorable to Plaintiff, this Court can conceive of no set of facts that could support the heightened requirements attendant to Plaintiff's ADA claim where the alleged disability substantially limits the major life

13

activity of working.  That is, in deciding whether to allow Plaintiff to amend his ADA claim, "a trial court may consider whether the amendment would be futile."  Walton v. Mental Health Ass'n of Southeastern Pennsylvania, 168 F.3d 661, 665 (3d Cir. 1999) (citing F.D.I.C. v. Bathgate, 27 F.3d 850, 874 (3d Cir. 1994)).  The Walton case is particularly instructive.  In Walton, the United States Court of Appeals for the Third Circuit affirmed, inter alia, the district court's denial of Plaintiff's petition to amend the complaint to add a claim of discrimination based on the perceived disability of obesity.  168 F.3d at 665-66.  Walton argued that her former employer "did not release a promotional video in which she appeared because she was too obese."  Id. at 665.  The Court of Appeals noted that Plaintiff was apparently arguing that if defendant refused to release the video because she was too obese, "it must have perceived her as substantially limited in her ability to work because appearing in the video was part of her job." Id.  Thereafter, the Court defined the meaning of the term "substantially limited" when applied to the major life activity of working as restricted in the ability to perform either a class of jobs or a broad range of jobs, and not simply the inability to perform a single, particular job.  Id. (citing 29 C.F.R. § 1630.2(j)(3)(i)).  The Court of Appeals concluded that in arguing defendant had prevented her from performing a single aspect of her job by refusing to publish the video, Plaintiff had not alleged that defendant employer "perceived her as substantially limited in the major life activity of working under this standard."  Id.

       Likewise, in the case at bar, Plaintiff cannot meet this standard.  He has not averred, nor can he, that he is restricted in his ability to perform either a class of jobs or a broad range of jobs.  Instead, Plaintiff avers that he "has effectively performed his job duties," (Complaint ¶¶ 24-26), he "successfully completed his probation period," (Complaint ¶ 26), that

his slow performance was due to the unavailability of the proper equipment needed to perform his job (Complaint ¶ 19), and that he has been continuously in the employ of Defendant since 1975 (Complaint ¶ 10).  Consequently, it is recommended that Defendant's Motion to Dismiss Plaintiff's ADA claim pursuant to Rule 12(b)(6) be granted.  Likewise, it is also recommended that Plaintiff's PHRA claim be dismissed.

In addition, with the recommendation of dismissal of Plaintiff's ADA claim, this court must also, <u>sua</u> <u>sponte</u>, recommend dismissal of Plaintiff's hostile work environment claim. A hostile work environment claim based on a disability, requires a showing of the following:

1) [Plaintiff] is a qualified individual with a disability under the ADA;

2) [Plaintiff] was subject to unwelcome harassment;

3) the harassment was based on [his] disability or a request for an accommodation;

4) the harassment was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive working environment; and

5) that [Defendant] knew or should have known of the harassment and failed to take prompt effective remedial action.

<u>Walton</u>, 168 F.3d at 667 (citing <u>McConathy v. Dr. Pepper/Seven Up Corp.</u>, 131 F.3d 558, 563 (5th Cir. 1998); <u>Vendetta v. Bell Atlantic Corp.</u>, 1998 WL 575111, at *9 (E.D.Pa. 1998)). Insofar as Plaintiff is unable to sustain his ADA claim for failure to show that he suffers from a disability that substantially limits the major life activity of working; he cannot satisfy the first element of a hostile work environment claim based on a disability.  Therefore, it is recommended that Plaintiff's claim for hostile work environment be dismissed.

Conversely, Plaintiff's claim for retaliation may exist independently of his ADA claim.  As noted by the United States Court of Appeals for the Third Circuit, Plaintiff's claim

15

may survive even though he is unable to show that he is "disabled" as defined by the ADA:

> Unlike a claim for discrimination under the ADA, an ADA retaliation claim based upon an employee having requested an accommodation does not require that a plaintiff show that he or she is "disabled" within the meaning of the ADA. "The right to request an accommodation in good faith is no less a guarantee under the ADA than the right to file a complaint with the EEOC, and we have already explained that the ADA protects one who engages in the latter activity without regard to whether the complainant is 'disabled.'" Shellenberger [v. Summit Bancorp, Inc., 318 F.3d 183, 188 (3d Cir. 2003)]. Thus, as opposed to showing disability, a plaintiff need only show that she had a reasonable, good faith belief that she was entitled to request the reasonable accommodation she requested. See id.

Williams v. Philadelphia Housing Auth. Police Dep't, 380 F.3d 751, 759 n. 2 (3d Cir. 2004).

In order to make out a claim for retaliation, plaintiff must show the following: "1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Williams, 380 F.3d at 759 (citing Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002) (quoting Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)).

Here, accepting all of Plaintiff's allegations as true and all reasonable inferences therefrom, and viewing them in the light most favorable to Plaintiff, Plaintiff may have stated a claim with regard to retaliation. In light of the amorphous structure of the Complaint, however, it is recommended that Defendant's Motion for a More Definite Statement be granted with regard to the retaliation claim. Plaintiff should specify the protected activity in which he engaged, the adverse action undertaken by the Defendant either after or contemporaneously with Plaintiff's protected activity, and the causal connection between the employee's protected activity, and the employer's adverse action in light of relevant Third Circuit case law, and with

enough specificity so as to reasonably require Defendant to frame a responsive pleading.  See Fed. R. Civ. P. 12(e).

        3.      <u>Negligence</u>

        Similarly, in light of the amorphous structure of Plaintiff's Complaint, it is recommended that Defendant's Motion for a More Definite Statement be granted as it relates to Plaintiff negligence claim.  Plaintiff should set forth the elements of a <u>prima facie</u> case of negligence under Pennsylvania law with such specificity so as to reasonably require Defendant to frame a responsive pleading.  <u>See</u> Fed. R. Civ. P. 12(e).

        4.      <u>Statute of Limitations</u>

        Defendant also contends that some of the allegations of the Complaint are the same as those previously dismissed by the EEOC in 2001 and 2002 for which Plaintiff failed to file suit within ninety days of receiving his letter of determination.  Therefore, any allegations relating to these charges, argues Defendant, are barred by the applicable statute of limitations.  Plaintiff does not dispute that he did not file suit after the dismissal of these prior complaints with the EEOC.  Plaintiff argues, however, that all acts occurring in 2001 and 2002 are relevant to the instant action because he has averred an ongoing course of conduct.

        In order for evidence to be considered that occurred prior to the statutory cut-off dates, Plaintiff must demonstrate that an equitable exception to the timely filing requirement applies.  One such equitable exception is the continuing violation theory, under which a plaintiff may pursue a claim for alleged "discriminatory conduct that began prior to the filing period if he can demonstrate that the act is part of an ongoing practice or pattern of discrimination of the defendant."  <u>West v. Philadelphia Elec. Co.</u>, 45 F.3d 744, 754 (3d Cir. 1995) (citing <u>Bronze</u>

Shields, Inc. v. New Jersey Dep't of Civ. Serv., 667 F.2d 1074, 1081 (3d Cir. 1981); Jewett v. Int'l Tel. and Tel. Corp., 653 F.2d 89, 91 (3d Cir.1981)).  For the court to apply the continuing violation theory, the Plaintiff must demonstrate two things: (1) "at least one act occurred within the filing period" and (2) "the harassment is 'more than the occurrence of isolated or sporadic acts of intentional discrimination.'" Id. at 754-55 (citations omitted).  In determining whether the continuing violation theory should be applied, the court must distinguish "between the occurrence of isolated, intermittent acts of discrimination and a persistent, on-going pattern." Id. at 755.  The Third Circuit has adopted the approach delineated by the Fifth Circuit in Berry v. Bd. of Supervisors of Louisiana State Univ., 715 F.2d 971, 981 (5th Cir. 1983) to assist in making this distinction, which requires the court to consider:

> (i) subject matter–do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation;
>
> (ii) frequency–are the alleged acts recurring, or more in the nature of an isolated work assignment or employment decision; and
>
> (iii) degree of permanence–does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights [(e.g., denial of promotion, suspension, termination)], or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent upon a continuing intent to discriminate?

Rush v. Scott Specialty Gases, Inc., 113 F.3d 476, 481-82 (3d Cir. 1997) (citing West, 45 F.3d at 755 n.9; Berry, 715 F.2d 971).

As discussed above, the Complaint is unclear as to the specifics of Plaintiff's retaliation claim and when these acts allegedly occurred.  Consequently, this Court declines to consider the "continuing violation theory" at this time.  The parties are not foreclosed from

18

raising this issue at the appropriate time.  Therefore, it is recommended that Defendant's Motion

to Dismiss and have stricken from the Complaint any allegations pertaining to the 2001 and 2002

EEOC charges, be denied.


III.     <u>CONCLUSION</u>

        Therefore, it is this court's recommendation that Defendant's Motion to Dismiss

Plaintiff's claims filed pursuant to Title VII, the Equal Pay Act, the Americans with Disabilities

Act, the Pennsylvania Human Relations Act, and the hostile work environment claim be granted.

It is further recommended that Defendant's Motion to Dismiss be denied as it relates to

Defendant's arguments concerning the statute of limitations.  Finally, it is recommended that

Defendant's Motion for a More Definite Statement be granted insofar as it relates to Plaintiff's

retaliation and negligence claims.

        In accordance with the Magistrate's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule

72.1.4(B) of the Local Rules for Magistrates, the parties are allowed ten (10) days from the date

of service to file objections to this Report and Recommendation.  Any party opposing the

objections shall have seven (7) days from the date of service of objections to respond thereto.

Failure to file timely objections may constitute a waiver of any appellate rights.


          /s/ Lisa Pupo Lenihan
        LISA PUPO LENIHAN
        United States Magistrate Judge


Dated: August 8, 2005

cc:     The Honorable Gary L. Lancaster
United States District Judge

Susan M. Papa, Esquire
Papa & Papa
439 Court Street
New Castle, PA 16101
Attorney for Plaintiff

Phillip L. Clark, Jr., Esquire
Balph, Nicolls, Mitsos, Flannery, Motto & Clark
14 North Mercer Street
300 Sky Bank Building
New Castle, PA 16101
Attorney for Defendant